## ZIBA A. LELAND, Appellant, *v.* CHARLES CAMERON *et al.*, Respondents.

Where the case contains no finding of facts, the appellant is not entitled to be heard on his appeal.

Where it has been shown that search has been made in the clerk's office for the execution sought to be proved, and that it could not be found; that the person then sheriff is dead; that his house had been burned; and that the execution could not be found on inquiry for it of the members of his family; it is sufficient proof of its loss to admit of secondary evidence of its existence and contents.

In such case, the entry by the attorney in his register of the issuing of such execution to the sheriff—the attorney himself being dead—is competent evidence of such fact.

The contents of the execution in such case may be inferred from the facts, that the law prescribes its form; the attorney issuing it was conversant with such instruments, and the sheriff to whom it was directed knew what it must contain to authorize him to sell the property.

In view of such facts, and after a lapse of thirty years, the court may assume that the execution was in due form, containing all such directions as the statute required it should contain.

In the absence of proof to the contrary, it is presumed that the officer, in selling property under an execution, complied with all the requirements of the statute.

APPEAL from a judgment of the Supreme Court affirming a judgment of the Special Term, dismissing the plaintiff's complaint with costs. And also from an order of the same court affirming an order of the Special Term, denying a motion to strike out so much of the judgment as awarded costs to the plaintiff.

The complainant alleged that on the 1st of January, 1818, William Helm, of Bath, Steuben county, since deceased, was the owner in fee of the premises described therein, lying and being in said county. That on the 30th November, 1825, said Helm appointed the plaintiff and one Daniel G. Skinner his agents and attorneys, to take possession of and sell his real and personal estate, and to give deeds thereof, and to pay said attorneys for advances then and thereafter to be made, to and for the benefit of said Helm, and by the same

instruments conveyed one-half of all his real estate to said attorneys, and at the same time said Helm made his will, whereby he appointed them to be his executors and his trustees, with the same powers contained in the deed. That said attorneys made large advances to said Helm, which became chargeable to his real estate. Said Helm died in March, 1827, leaving said will, and for a money consideration said Skinner quit-claimed and transferred to the plaintiff all his title under the said deed, powers and will, and all his claim on the estate of Helm. That Dugald Cameron, in February, 1818, pretended to have purchased the premises described in the complaint at sheriff's sale, or some part of it, by virtue of a judgment, which he claimed to be in form; and on the 2d of March, 1818, made and signed a declaration of trust, that he held said lands in trust for said Helm.

Dugald Cameron died in 1828, having by will made Charles Cameron his executor, with power to sell his lands, and devised the same to said Charles. That Charles claims to be owner as executor and trustee, and Davenport claims that he has some right or interest in said lands. The piece of land secondly described in said complaint has been since 1818 in possession of Dugald Cameron, and in that of Charles and Davenport, who have received the rents and profits, which have been $500 annually since 1818. Judgment is demanded that the said executor and Davenport convey said lands to the plaintiff, and surrender possession and account for the rents and profits to him.

The answer denies the complaint, and, by way of defense, alleges that Dugald Cameron, in December, 1816, recovered a judgment in the Court of Common Pleas, of Steuben county, against said Helm for $2,600 debt and $10 costs, issued execution thereon to the sheriff of Steuben, for $1,311.95. That on said execution the sheriff sold certain of real estate described, and the said Dugald became the purchaser at such sale of the piece first described in the complaint; but whether of the second piece, they do not know. That at time of said sale the said Helm did not own the piece secondly described in complaint, but held the same by contract from one Hornby.

That said Helm applied to said Dugald for his consent to sell and dispose of the same to the use of said Helm, and he did consent, and Helm, in June, 1819, transferred this contract for 150 acres to one McBurney for $500, which was paid. McBurney afterwards assigned the same to one John McGee, who obtained a deed of the said land. That Helm had the benefit of the $500 paid by McBurney. In July, 1831, said Charles Cameron conveyed the piece of land firstly described in said complaint to said Davenport by deed, with covenant of warranty; and that neither said Cameron or said Davenport had any knowledge that said plaintiff or Helm or any other person, had any interest therein.

For a further defense, the defendants plead the ten years' statute of limitations.

The plaintiff replied; denying the recovery of judgment by Dugald Cameron, the sale and purchase by said Dugald, and all other matters affirmatively alleged in said answer.

On the trial, the plaintiff proved the power of attorney from Helm to the plaintiff and Skinner; also the papers, giving to the same persons a lien on his property for such advances as they might make, and conveying to them one-half of his property, except certain parts reserved to himself and his children; the agreement, by which Skinner transferred his interest in the property to Leland, and the will of said Helm, being the same instruments set out in the complaint.

The plaintiff further proved, that Davenport was in possession of a part of the premises described in the complaint, and that Helm died in March, 1827.

The plaintiff having rested, the defendants moved for a nonsuit on the grounds,

1st. That plaintiff had not shown any title to the premises described in the complaint.

2d. That he had failed to prove any of the facts alleged in his complaint.

The motion was denied, and defendants' counsel excepted.

The defendants then proved the recovery of judgment in favor of Dugald Cameron against Helm, as charged in the

complaint — the sale and conveyance, by the sheriff to him, of the premises firstly described in said complaint. This evidence was objected to by the defendants, on the ground that the issuing of an execution was not proved. It was then proved that the search had been made in the county clerk's office, and no such execution could be found; that the person who made the sale, as sheriff, had removed from the State to the West; that since the sale, his house was burned and he himself was dead; and that inquiry for the execution had been made of the family, but none could be found. It was also shown, under the plaintiff's objection as to the competency of the evidence, that the attorney who entered up the judgment was dead, and that on his law register, amongst the entries of the proceedings in the case, was, "*Fi. fa.* issued December 19th, 1816, to McClure." The receipt of the execution was recited in the sheriff's deed. The court overruled the plaintiff's objection, and admitted the evidence.

The defendant also proved the allegations in the answer in regard to the contract from Hornby to Helm and the assignments thereof, and a deed of the same premises to McGee, and a deed from Charles, as executor of Dugald, to Davenport, with covenant of warranty, consideration $250.

The defendant then rested, and the plaintiff put in evidence a letter, dated 24th December, 1816, from Dugald Cameron to Helm, in which said Cameron says, that in order to enable him (Helm) to dispose of his real estate, and particularly of that in the contemplated sales to Pratt, Conger and McClure, he did thereby agree to release from his judgment the lands which those persons contemplate purchasing, and that he would execute any writing, needful in law, to remove any embarrassment created by the judgment, as he felt himself otherwise fully safe.

The plaintiff then put in another letter from said Dugald to Helm, dated the 2d March, 1818, in which he says that the property he purchased at sheriff's sale on the 28th February, 1818, he should always be ready to convey to him (Helm) or his order, on payment of the money due him. He said he wished it understood that he (Helm) was at liberty to dis-

pose of the property for his own use and benefit, and should confirm the title of the purchaser, it being, he says, clearly understood that his (Helm's) interest is to be considered, and not his (Cameron's).

The plaintiff put in evidence another letter from said Dugald to Helm, dated 6th July, 1824, in which said Dugald admits owing him (Helm) $25, which he had forgotten. He sent him $10, and promised to pay the balance.

Evidence was then given by the plaintiff tending to show that Helm was involved; that he had been rich but became poor. He was insolvent in 1826.

The defendant gave evidence on the same subject, and put in evidence the record of a mortgage from Helm and wife to one Pultney, dated 10th May, 1809, for $905.30, on the piece of land first described in the complaint, and the foreclosure of the same and purchase of the premises by one Conger; and from him they passed to several persons, and finally to Dugald Cameron, in 1821. The mortgage was objected to because the bond was not produced, and the objection was overruled. Also, a warranty deed from Davenport to one Mehoun, of the $500 described in the complaint, in November, 1848.

The plaintiff's counsel then insisted:

1. That the pleadings admitted legal title in Helm up to 30th November, 1825. That his title was not divested by sheriff's sale, as no *fi. fa.* was proved, and because the sale was of several parcels in a lump.

2. That Cameron held the premises in trust for Helm, and that there was evidence that Cameron had been paid up; that Davenport was not a *bona fide* holder. That plaintiff has all the rights of Helm, and is to be deemed owner or *cestui que trust.*

3. That plaintiff is entitled to insist upon the rights of a creditor of Helm.

The court overruled the objection and ordered judgment for the defendants.

In making up the record, the defendant's attorney entered a judgment for costs against the plaintiff. The plaintiff's

counsel, when informed of such judgment, moved to set it aside, on the ground that he sued as a trustee, and costs could not be recovered against him as of course, nor without a special order of the court. The court denied the motion, with costs; and the plaintiff then appealed to the General Term, from both the judgment and order, and that court affirmed the same.

*Z. A. Leland,* for appellant.

*R. B. Van Valkenburgh,* for respondent.

MULLIN, J. The case contains no finding of facts, and by repeated decisions of this court the appeal cannot be heard. (16 N. Y., 610, 613, 617; 3 Kern., 344; 20 N. Y.)

If, however, the court should deem it proper to overlook this error in practice, I will briefly assign the reasons which induce me to vote for the affirmance of the judgment. It must be assumed, in the absence of any objection on the trial, by the defendant, that Helm had title to the lands in question at the time of the recovery of the judgment against him by Dugald Cameron; and I will further assume that the title was in fee. That judgment is concededly regular, and was therefore a valid lien on all the lands of said Helm. It was proved that the sheriff sold the premises in controversy; that they were bid in by said Cameron, and conveyed by the sheriff to him, by deed, dated the 3d of March, 1818, which was duly recorded on the 2d of April of the same year. To the validity of this conveyance two objections are taken: 1st. That it was not proved that an execution was issued in the form required by law; and, 2d. That the premises sold consisted of several lots or tracts, and they were all sold as one parcel, whereas they should have been sold separately.

In regard to the first objection, it was shown that search had been made in the clerk's office for the execution, and none could be found; that the person then sheriff had had his house burned — removed next, and died, and that on inquiry of the members of the family, it could not be found.

This was sufficient evidence of loss to admit secondary evidence of its contents. But it was necessary first to show that an execution was issued to the sheriff. The only evidence on that subject was the entry of the attorney in his register. The attorney was dead, and hence his entries of any fact which may be thus proved might be received in evidence.

The rule of evidence applicable to entries made by deceased persons, is thus stated in 1 C. & H., note 675 : that all entries or memoranda made in their course of business or duty by any one who would, at the time, have been a competent witness of the fact which he registers, are competent. In these are included entries of notaries and bank receivers, as to the demand and protest of notes (15 Mass., 383; 7 Wend., 160), merchants' clerks, surveyors and engineers, and commercial agents. (See also 1 Greenl. Ev., §§ 115–17.) That it is the practice of lawyers to keep entries of the proceedings in a cause, is as well known as that merchants keep books in which are entered goods sold on credit. It is as much the duty of the lawyer to keep a record of such proceedings, as of the notary of the time of making demand of payment of a bill or note, or of the time and manner of serving notice of non-payment.

I entertain no doubt but that the entry of the issuing of execution was properly received, and that, being received, it proved the issuing of an execution to the sheriff at the time mentioned in the entry. In arriving at the contents of the execution it must be borne in mind that its contents were prescribed either by statute or by the practice of the courts, and, with the exception of a description of the judgment, all executions against property were then and still are alike. The person who issued it was a lawyer, conversant with such instruments, and the sheriff to whom it was delivered knew what such process must contain in order to authorize him to sell. In view of these facts, and after a lapse of over thirty years, we must assume that the execution was in due form, containing all such directions as the statute or practice required such process to contain.

As to the alleged irregularity in the sale, it seems to me there is no evidence in the case on which to rest it. It was the duty of the officer to sell in parcels, and the presumption is that he has done it. That presumption is not overcome or affected by the recital in the deed that the whole premises were bid off for a gross sum. The sale may, consistently with the recital, have been in parcels, and we must presume that it was.

I think the sale by the sheriff was valid, and that Dugald Cameron acquired a valid title thereto as against the judgment debtor, Helm.

It was in 1826 that the plaintiff acquired the title under which he now claims (except so far as the will forms an element of it which became operative in the spring of 1827, on the death of said Helm). At that time the title of Cameron was, as I have shown, perfect as against Helm, and of course there was nothing to pass to the plaintiff and Skinner.

To meet and overcome this difficulty, the plaintiff proved three letters from Dugald Cameron to Helm, one dated after the recovery of the above mentioned judgment and before the sale, and one a few days after the sale, and the other in 1824, some six years after the sale, for the purpose of proving that said Cameron held said lands in trust for said Helm at the time of the conveyance by Helm to plaintiff and Skinner. I fully concur with the learned judge who tried the cause, that these letters are not sufficient evidence to establish a trust. Although no particular form of words is necessary to create a trust, it is necessary that the intent thus to hold should be clearly manifested.

In this case we have a valid judgment, which is conclusive evidence of an indebtedness from Helm to Cameron; that judgment enforced to a sale and a purchase by the creditors, without any evidence of even a negotiation between the parties in regard to the reservation of any interest in the debtor. The letters relied on as evidence of a trust, are the declarations of a kind and generous creditor to his debtor, of his willingness to extend to him every indulgence in his power, that does not destroy his security for his debt. I can-

not believe that either Cameron or Helm supposed that a trust was created by these letters, or even intended to be created.

If the plaintiff fails in establishing a trust, he then insists that the letters are evidence that the judgment was in the nature of a mortgage, and that such mortgage has been paid.

The judgment was not taken as security for a debt, an essential requisite to convert a deed or other instrument or conveyance into a mortgage. (See cases collected in Abbott's Digest, title Mortgage, § 7, &c.) The debt was merged in the judgment. The deed was taken in pursuance of the sale, not as security for the judgment or any part of it, but in payment to the amount of the bid.

The letters show a willingness to relinquish the title on being paid the amount to which he deemed himself entitled, but they do not show that he either took or held the title by way of security for any subsisting indebtedness.

The letter of the 6th July, 1824, is no evidence that the amount bid at the sheriff's sale had been paid. It may be evidence that the balance of the judgment not satisfied by that sale has been paid. The sale and conveyance by the sheriff operated as payment of so much of the judgment as Cameron bid at that sale. That part of the judgment being satisfied, nothing short of evidence of a vacation of the sheriff's deed and sale could revive that part of the debt.

In no aspect of the case is the plaintiff entitled to recover, and the judgment of the Special Term and of the General Term were right, and must be affirmed.

The action was prosecuted by the plaintiff for his own benefit, and he was liable for costs. To release a plaintiff from such liability, under section 317 of the Code, he should not leave the character in which he acted open to doubt or cavil. The court below had the right to treat him as suing in his own right, and therefore to charge him with costs. The order of the General Term must be affirmed with costs.

All the judges concur in the affirmance of the judgment; WRIGHT, J., on the ground of want of statement of fact.

DAVIES, INGRAHAM, HOGEBOOM, and JOHNSON, JJ., and DENIO, Ch. J., affirm on both grounds.  SELDEN, J., did not vote.

Judgment affirmed.