ALBANY,
Oct. 1826.

The People
v.
Walbridge.

THE PEOPLE *against* WALBRIDGE.(*a*)

An indict-
ment against
an attorney,
&c. upon the
statute, (*sess.*
41, *ch.* 259, *s.*
1,) for buying
a note, need
not allege that
he bought the
note with in-
tent to prose-
cute, &c.; nor
that the note
has been pros-
ecuted; nor
need it show
when it be-
came due, its
amount, or
other circum-
stance, from
which an in-
tent to prose-
cute is to be
inferred.

The act of
buying is the
offence, unless
it come within
the *proviso* of
the statute;
which it lies
with the de-
fendant to
show.

The statute
is constitu-
tional.

The indict-
ment upon it
may conclude,
contrary to the
form of the
*statute*, in the
singular. It
need not be
contrary to the
form of the
*statutes*.

The omis-
sion, in recit-
ing the title,
of the word
*the*, after *the practice of,* will not vitiate the indictment.

AT the *Rensselaer* oyer and terminer, in *November*, 1824, an indictment was found against the defendant; the *first* count of which charged, that on the 20*th* day of *April*, 1824, he did buy a certain promissory note of, and from one *J. B. S.*, the holder and proprietor of the note, which was made and signed by one *W. M.* and dated *April* 14*th*, 1824; by which note *W. M.* promised to pay one *A. V. A.* the sum of $125,50, at the bank of *Lansingburgh*, in 90 days from the date; that the note was endorsed by *A. V. A.*, whereby it became and was the property of *J. B. S.* till the purchase by the defendant, for a good and valuable consideration; the defendant, at the time he so purchas-ed, being an attorney and counsellor of the supreme court of judicature of the state of *New-York*, and of the court of common pleas of the county of *Rensselaer*; and that he did not buy or receive the note in payment for any estate real or personal, or for any services actually rendered, or for any debt antecedently contracted, or for any purpose of remittance, without any intent to violate or evade the act, &c. entitled "an act to prevent abuses in the practice of law, and to regulate costs in certain cases," passed *April* 21, 1818; to the evil, &c. and against the form of the statute in such case made and provided; and against, &c.

*2nd count.* That the defendant, on the 1*st* day of *No-vember*, 1824, did buy of and from one *P. B.* and become interested in buying of and from *P. B.*, a certain other promissory note, made and signed by *W. M.*, by which *W. M.* promised to pay to *P. B.*, or bearer, the sum of $42,60, the defendant at the time he so bought and pur-chased the last mentioned note, being and still being an attorney and counsellor of the supreme court of judicature of the people of the state of *New-York*; and that he did not buy or receive the same note in payment for any es-

(*a*) This cause was decided in *May* term, 1826.

tate real or personal, or for any services actually rendered, or for any debt before that time contracted, or for any purpose of remittance ; to the evil, &c. and against the form of the statute, &c. (as in the first count.)

*3d count.* That the defendant, on the 1*st* day of *November*, 1824, knowingly, wilfully, and corruptly became and was interested in buying a certain promissory note, made by one *W. M.* for the sum of $125,50, payable to one *A. V. A.* ; and also one other promissory note, made by *W. M.* payable to one *P. B.* or bearer ; and also one other promissory note, made by *W. M.* to one *E. G.* for the sum of $31,20 ; also one other promissory note, made by *W. M.* payable to one *C. F.* for a sum of money to the jurors unknown ; the defendant, at the time of the purchase of each and every of these notes, and at the time he became so interested in the purchase thereof, being and still being an attorney and counsellor of the supreme court of judicature of the people of the state of *New-York ;* and that he did not become interested in the purchase of either of these notes, by way of payment for any estate real or personal, or for any services rendered before the purchase of these notes respectively, or for any purpose of remittance, without any intent to evade or violate the act, &c. (*as in the first count.*)

At the oyer and terminer of the same county, in *June,* 1825, the defendant demurred generally to this indictment ; and after argument, that court held the indictment sufficient ; and rendered judgment against the defendant. They, however, advised the district attorney to have the questions arising on the indictment, submitted to the supreme court for their decision ; and in case this court should agree with the oyer and terminer, that the defendant have liberty to plead not guilty.

Pursuant to this advice, the cause was argued and decided here.

*Walbridge,* in person. The indictment is defective both in form and substance. 1. *In form.* It misrecites the title of the statute (*sess.* 41, *ch.* 259,) upon which it is founded. The word *the* is omitted after the words *prac-*

The People
v.
Walbridge.

*tice of.* This is a material and fatal variance. (2 *Hawk. P. C. ch.* 25, *s.* 101, 104. 2 *Hal. P. C.* 172. *Bac. Abr. Indictment*, (*H.*) 1 *Doug.* 97, *per Ld. Mansfield.* 1 *Ld. Raym.* 382. 2 *Ld. Raym.* 1038, 9. 1 *Esp. Rep.* 98. 1 *Saund.* 135, *n.* (3.) 6 *T. R.* 776.) A misrecital of the title is equally fatal, as if it were of the body of a statute. The title is a name given by the maker ; and though it be not necessary to set it forth, if this be attempted, it must be done correctly. (*Esp. on Pen. Act.* 106, 7.)

Again; there are two statutes prohibiting the same thing; the statute of 1813, (*sess.* 36, *ch.* 48, *s.* 7,) and the statute of *April* 21, 1818, mentioned in the indictment. Yet the indictment concludes against a single statute. It should have concluded *contra formam statutorum.* (3 *Bac. Abr. Indictment*, (*H.*) *p.* 114. 2 *Hawk. P. C.* 252. *Esp. on Pen. Act.* 114.)

2. *In substance.* The indictment does not set forth the offence which the statute was made to prohibit. It should aver that the notes were purchased for *collection* or *prosecution.* An indictment upon a penal statute, must state all the circumstances which enter into the definition of the offence. And all penal statutes must be construed most favorable to the defendant. (1 *Hal. P. C.* 170, 517. 2 *id.* 170, 2. *Dy.* 304. 1 *Chit. Pl.* 357.) The mere act of buying a note is not an offence against the statute. (1 *Cowen*, 458. 3 *Cowen*, 252.) It does not appear that the notes were even due, when they were bought ; and as to the note in the first count, it appears on the face of the indictment, not to have been due. The presumption is, that every man will meet his engagements ; and it is impossible even to infer from the indictment that the notes were purchased for the purpose of prosecution. They were never prosecuted. Buying a note comes within the *proviso* of the first section, that a promissory note may be received in payment for estate real or personal What is money but personal estate ? The note mentioned in the second count is less than $50. It could not be sued in a court of record with a view to

costs.   So as to three of the notes in the third count.  All three of these are set forth without date or time of payment; and an additional one without amount.   This count is bad for uncertainty.

The abuses in the practice of the law intended to be prevented by the statute, were buying and prosecuting choses in action, and making bills of costs.   The mere buying a note, is no part of the practice of the law.

The statute is unconstitutional, if the construction contended for on the other side be correct.   Every class of citizens has equal natural rights, which the legislature cannot take away more from one class than another.   To say that one shall not purchase a chose in action, because he is an attorney, is depriving him of a right which every citizen has an equal claim to ; and which the legislature cannot take from him without his consent.   They would have a right to prohibit the same thing to a merchant or mechanic, because he is a merchant or mechanic.   They might, on the same principle, forbid the farmer to sell his wheat, for fear that he might loan his money at usury, or purchase rum and get drunk with it.

*J. Pierson*, (*district attorney*,) contra.   *As to form.* The variance complained of is immaterial.   If it do not alter the sense, it will not vitiate.   (1 *Chit. Cr. L.* 280, *and the authorities there cited.*)   Besides, the recital may be rejected as surplusage.   The counts all concluding contrary to the form of the statute, it was not necessary to recite the title at all.   (*id.* 281.)   The second count does not recite the title.   The objection not applying to this, though it be good as to the other counts, will not, therefore, support the demurrer, which is general to all the counts.   If any count is good, judgment must be against the defendant.

The two statutes referred to on the other side, are distinct and wholly unconnected.   But the conclusion would be good, if the indictment were grounded on two statutes. It is never necessary to conclude an indictment as being contrary to the form of *statutes*, in the plural.   (1 *Chit.*

The People
v.
Walbridge.

*Cr. L.* 240.  *Cro. Eliz.* 750.  1 *Saund.* 135, *note* (3.)
2 *Saund.* 377, *note* (12,) *Cro. Jac.* 187.)

*As to substance.* The act of 1818 does not, either expressly or impliedly, require that the note should be bought for collection or prosecution, or that it must be prosecuted. To require either, would be inconsistent with the object which the legislature had in view. The construction contended for by the defendant, would render the statute nugatory. It would not go beyond the act of 1813 This court, whenever they have spoken of these acts, have recognized a difference, though they say the acts are *in pari materia.* (3 *Cowen,* 261. 1 *Cowen,* 452.) It is evident that the legislature esteemed the first act ineffectual, on account of its requiring an intent to prosecute to be shown. The difficulty of doing this, from the various modes of evasion resorted to, led the legislature to make the mere act of purchasing a chose in action the offence. They, in this manner, strike at the root of the evil. If this construction be correct, it is immaterial when the notes were dated, what their amount, or when due.

As to the objection for unconstitutionality : The legislature have the same right to impose restrictious upon attorneys in the practice of law, that they have to regulate inns and taverns, or the inspection of provisions. It is optional with the attorney, whether he will, or will not practice under such restrictions. (*b*)

*The Court* held the indictment to be good both in form and substance. They said, the intent with which an attorney or counsellor buys a note, need not be alleged in the indictment ; nor need it be averred that a prosecution has been commenced on it. The act of buying constitutes

(*b*) I remember that Mr. *Cook*, of *Saratoga*, appeared in this court, at the *August* term, next after the passage of the act of 1818, and moved to have his name stricken from the rolls of the court, as attorney and counsellor ; which the court ordered to be done.

the offence ; (c) and on this being shown, it lies with the defendant to make out that he is within the *proviso* of the statute. The date, amount, time when due, &c. with other circumstances going to the question of intent, are, therefore, immaterial. We think the legislature intended to forbid the purchase of notes, &c. by attorneys or counsellors, in all cases, except those coming within the language or spirit of the *proviso*.

We have no doubt the act is constitutional ; nor are the exceptions to the indictment, in point of form, well taken.

(c) The intent of the legislature, as rendered by the court, if it require manifestation by any thing out of the plain language of the statute. is confirmed by a comparison of this statute, with one copied from it in relation to justices and constables. The two acts are almost *verbatim* the same, (*mutatis mutandis*,) with the addition of the distinguishing words in the latter, " for the purpose of commencing any action thereon." They run thus :—

| *Stat. sess.* 41, *ch.* 259. *s.* 1. | *Stat. sess.* 43, *ch.* 159, *s.* 1. |
|---|---|
| " That no attorney or counsellor at law of any court of record in this state, shall, directly or indirectly buy, or be in any way or manner interested in buying any bond, bill, promissory note, bill of exchange, book debt, or other chose in action ; nor shall any such attorney or counsellor, by himself, or by or in the name of any other person, either before or after suit brought, lend or advance," &c. (provision against procuring debts *for collection* by loan.) | " That no justice of the peace, or constable, shall, directly or indirectly buy or be interested in buying, any bond, bill or promissory note, bill of exchange, book debt, or other chose in action, *for the purpose of commencing any action thereon* ; nor shall any justice or constable, by himself, or by or in the name of any other person or persons, either before or after suit brought, either lend or advance," &c. (provision against procuring debts *for collection,* by loan.) |

Every body will see that the passage of the last act is a direct legislative construction of the first, as to the question of *purpose* or *intent* in buying the note, &c. ; and that this construction accords with that given by the supreme court in the principal case.